Filed 8/4/14  P. v. Kennedy CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>TYRONE KENNEDY,<br><br>        Defendant and Appellant. | B247076<br><br>(Los Angeles County<br>Super. Ct. No. BA395971) |

APPEAL from a judgment of the Superior Court of Los Angeles County. William N. Sterling, Judge.  Affirmed.

Helen S. Irza, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II, Steven E. Mercer and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

_____

The trial court revoked appellant Tyrone Kennedy's probation and imposed the previously suspended sentence. Appellant's sole claim on appeal is that the trial court should have ordered a supplemental probation report. We reject this contention and affirm.

We first summarize the evidence that led to the revocation of appellant's probation.

**TESTIMONY AT THE PROBATION REVOCATION HEARING**

On November 22, 2011, appellant and Betsye Cooper were "cohabitating" in a tent. Cooper had been living in the tent with appellant for about five months. Appellant was with Cooper pretty much every night.

On the evening of November 22, 2011, appellant asked Cooper for money but she refused his request because she felt they needed the money for basic food needs. Appellant and Cooper began to argue. After Cooper refused to give appellant the money, appellant pushed Cooper down in the tent, got on top of her and put his hands around her neck. Appellant kept squeezing Cooper's neck for several minutes with both hands. While appellant was on top of Cooper, she felt as if she "lost minutes somewhere," that "there was a space that I didn't know what was going on at all" and "everything faded away."

When Cooper "came to," appellant was no longer choking her, but was still sitting on top of her. She pushed appellant off, got out of the tent as fast as she could, ran down the street and flagged the police.

As a result of the choking, Cooper had marks on her neck and her neck was sore for three or four days. There were also red marks on the side of her neck, close to her collarbone. The red marks below Cooper's neck ensued from being pushed on by appellant and Cooper's pushing appellant to get him off of her. The police took pictures of the marks on Cooper's neck.

Cooper testified that appellant appeared to be under the influence of alcohol based on his behavior; however, she did not see appellant drinking that day. On the date of the

argument with appellant, Cooper was on medications Risperdal and Remeron to treat her depression and bipolarism. Cooper has been arrested for domestic violence. However, Cooper did not go to prison for the domestic violence arrest. In November of 1995, Cooper was sent to prison for robbery. Cooper does not have any other convictions besides domestic violence and robbery.

## PROCEDURAL HISTORY

On May 29, 2012, appellant was convicted of one count of selling cocaine and he admitted six prior convictions, all but one of them being convictions for the sale of controlled substances. The trial court imposed the low term of three years and added three years pursuant to Health and Safety Code section 11370.2. The court suspended the sentence and placed appellant on probation. One of the conditions of probation was that appellant was to serve one year in a "live-in" program, i.e., the "Dare-U-to-Care" program.

On June 6, 2012, appellant reported to the court that he had been rejected by Dare-U-to-Care. The court ordered a supplemental probation report and on June 15, 2012, approved for appellant the Lamp program and Project 180.

It is very doubtful that appellant ever complied with the court's order that he was to serve one year in a "live-in" program. The court observed during the hearing on December 17, 2012, that Cooper had testified that appellant had lived with her in the tent for five months which, according to the court, meant that he had not complied with the order that he serve one year in a "live-in" facility. During the continued probation revocation hearing on February 11, 2013, the court stated that it had modified the order in November 2012 to the extent of allowing appellant to spend six months in an outpatient status but that it appeared from correspondence received from Project 180 that appellant was living in a shelter or hotel and not in a Project 180 facility, i.e., that he was in an outpatient status at Project 180.

A supplemental probation report was prepared for a status hearing that was held on November 8, 2012. The report noted that appellant was in compliance with his

3

treatment at Project 180. The court took note of this report during the hearing on November 8, 2012.

The attack on Cooper took place on November 22, 2012. The People moved to revoke appellant's probation on November 27, 2012.

Although the court noted at one point that appellant's disregard of the order that he serve one year in a "live-in" facility justified revocation of the probation, there is no doubt that the court revoked appellant's probation because of his physical assault on Cooper. At the hearing held on January 2, 2013, the court noted that appellant had "engaged in serious violence against another person" which, standing alone, justified revocation of the probation. On February 11, 2013, when the court actually revoked appellant's probation, the court gave as the reason that appellant had committed an "attack which was violent and completely unwarranted." Shortly before making this ruling, the court stated that it was "a serious attack" and that the court found Cooper to be completely credible.

Thus, even though it is very doubtful that appellant ever complied with the "live-in" facility order, it is clear that probation was revoked because of the assault and battery inflicted on Cooper.

Appellant was sentenced to county jail for six years and received credit for 292 days. He was also ordered to pay various fines and fees.

## DISCUSSION

Appellant's argument that it was error to revoke probation in the absence of a supplemental probation report is predicated on the theory that appellant was doing well at Project 180 and that the trial court would have done differently it if had known about that.

This theory fails because probation was revoked over appellant's physical attack on Cooper. Given the trial court's unequivocal and strong language respecting the attack on Cooper, there is no reason to think that the court would have ruled differently because appellant had done well at Project 180.

4

In fact, appellant had not done particularly well at Project 180. In a letter dated December 31, 2012, Project 180 noted that appellant was "only moderately compliant with his treatment. His attendance was low averaging 2 days per week with 1 - 2 hours of treatment per day despite recommendations that he participate in a significantly more intensive treatment schedule." The letter states that appellant said he was only interested in avoiding a probation violation and that he also said that he was not invested in the treatment program. In addition, there were multiple times that appellant missed treatment for one week or more.

We agree with respondent that if it was error not to have ordered a supplemental probation report for purposes of the revocation hearing, the error was harmless. (*People v. Dobbins* (2005) 127 Cal.App.4th 176, 182 [lack of supplemental probation report is subject to *People v. Watson* (1956) 46 Cal.2d 818 error analysis].) It is simply inconceivable that a probation report prepared after November 2012 would have brought about a more favorable outcome. The court, in revoking probation, was aware of the December 31, 2012 Project 180 letter which, one would think, was the final nail in the coffin. In any event, probation was revoked over the assault on Cooper without any reference to appellant's performance, or lack of performance, at Project 180.

## DISPOSITION

The judgment (order) is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


                                        BOREN, P.J.

We concur:


    ASHMANN-GERST, J.            FERNS, J.*


_____

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice
pursuant to article VI, section 6 of the California Constitution.


5